559 P.2d 750

**Kathleen Mary DUIGNAN, Plaintiff-Appellant,**

v.

**A. H. ROBINS COMPANY, Defendant-Respondent.**

No. 12158.

Supreme Court of Idaho.

Jan. 27, 1977.

---

Lawrence J. Young, of Schlender & Young, Ketchum, for plaintiff-appellant.

John W. Barrett, Joseph Leon Parkinson, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent.

BISTLINE, Justice.

In May, 1972, at Stanford, California, appellant Duignan's physician, at her request, inserted into her an intrauterine device known as a Dalkon Shield, manufactured and supplied by respondent A. H. Robins Company, a corporation with its principal place of business in Richmond, Virginia. Appellant moved to Idaho on July 1, 1974, and has resided here until the present.

In October, 1974, appellant developed an infection and resultant tubal abscess which required a surgical procedure known as a left salpingectomy (removal of the left fallopian tube) on October 28, 1974, at Blaine County Hospital. In January, 1975, appellant underwent further exploratory surgery on her right fallopian tube.

On July 22, 1975, appellant filed her complaint containing three counts against A. H. Robins Company sounding in negligence, strict liability and breach of warranty, and seeking compensatory and punitive damages.

On September 3, 1975, respondent A. H. Robins Company filed a motion to quash service of summons and a motion to dismiss. In an order signed November 7, 1975, the trial court granted the motion to dismiss the complaint "due to lack of jurisdiction over the subject matter and lack of jurisdiction of the person." Appellant's motion for leave to amend her complaint was denied by the trial court in an order dated January 5, 1976. Appeal is taken from the two orders.

The single issue presented by this appeal is whether the trial court erred in ruling that an Idaho court can have no jurisdiction over A. H. Robins Company under the "tortious act" language of this

state's long-arm statute.[1] The governing statute is I.C. § 5–514(b):

"**Acts subjecting persons to jurisdiction of courts of state.**—Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . . . .

"(b) The commission of a tortious act within this state; . . . ."

Appellant Duignan argues that the holding in *Doggett v. Electronics Corporation of America*, 93 Idaho 26, 454 P.2d 63 (1969), is squarely on point and must control. That case involved the explosion of a boiler during installation in Idaho, with alleged negligence on the part of the out-of-state manufacturing process. The Court in *Doggett* rejected any interpretation of "tortious act within this state" that would require *both* the manufacturer's negligent act *and* the plaintiff's injury to occur in Idaho. I.C. § 5–514(b) was read to mean that,

"For the purpose of determining the state with jurisdiction as well as the substantive law which will govern, the state where the injury occurred and the cause of action thus accrued is generally the most logical state for adjustment of rights." 93 Idaho at 28, 454 P.2d at 65.

The trial court distinguished *Doggett*, because there the boiler explosion and resulting injury clearly occurred in Idaho. In the present case, on the contrary,

"The device was inserted in California, and the injury presumably commenced at that moment. It culminated in Idaho

after the claimant moved here. The surgery in Idaho cannot be equated with the injury nor can it be determined to be a breach of warranty."

The trial court reasoned: Because a tort consists of an act and an injury, and because the ultimate result of the injury (here the surgery) is not part of the tort, no "tortious act" had been committed in Idaho.

A. H. Robins Company insists that any other conclusion would fly in the face of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the United States Supreme Court case which demarcates the constitutional limits of a state's long-arm jurisdiction:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." 357 U.S. at 253, 78 S.Ct. at 1239.

Here, the argument goes, it was the "unilateral activity" of Duignan in moving to Idaho which alone renders respondent A. H. Robins Company vulnerable to the jurisdiction of the Idaho courts. A forum-shopping plaintiff with a "portable tort" should not be able to use Idaho's long-arm statute to sue a corporation which lacks any other contact with the state.

Whatever one might think of these arguments under a different set of facts, they are not to the point in this case. Here, appellant sought to amend her complaint so as to prove that the "injury"—and thus the consummation of the "tortious act"—occurred in Idaho. Duignan herself submitted an affidavit to the effect that she was in excellent health when she moved to Idaho on July 1, 1974. Her physician likewise submitted an affidavit, stating:

"It is my professional opinion, based on my examination and treatment of Kath-

---

1. Appellant has not invoked the section of Idaho's long-arm statute which submits a company to the jurisdiction of the courts of this state as to any cause of action arising out of,

  "(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or at-

tempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation." I.C. § 5–514(a)

We therefore offer no opinion as to what result would be dictated by the above language under the facts of this case.

leen Mary Duignan, that the surgical procedures performed on October 28, 1974 were made necessary by reason of an infection and resultant tubal abscess, both of which commenced in the time period which could not have exceeded one month prior to the time surgery was performed on October 28, 1974." (Cl.Tr., p. 25)

Despite these affidavits, the trial court denied appellant's motion to reopen the case and amend her complaint.

We need not rule on the trial court's denial of this motion. The trial court's memorandum decision makes it clear that the allegation of injury *in Idaho* had already been made during the hearing on respondent's motion to quash service of summons:

> " . . . the Plaintiff had an inter-uterine device inserted in the State of California. She then moved to the State of Idaho where the inter-uterine device is alleged to have caused infection which ultimately resulted in the removal of a fallopian tube in the Sun Valley Hospital."

This allegation brings this case squarely within the fact pattern of *Doggett*, namely, a defective product which is introduced into the stream of commerce out-of-state and which subsequently malfunctions in-state, thereby causing injury to an Idaho resident. The trial court, however, indulged the opposite presumption in finding that "the device was inserted in California, *and the injury presumably commenced at that moment.*" (Emphasis added.)

This Court has long held that in considering 12(b) motions for dismissal, the complaint must be liberally construed so as to do substantial justice, and all doubts must be resolved in favor of the party opposing the motion. *Intermountain Business Forms, Inc. v. Shepard Business Forms Co.*, 96 Idaho 538, 540, 531 P.2d 1183 (1975). This is particularly so in the present context where the Court has held that

> "I.C. § 5–514 must be liberally construed. The statute was designed to provide a forum for Idaho residents; '[a]s such, the

law is remedial legislation of the most fundamental nature.' " *Intermountain Business Forms, Inc. v. Shepard, supra,* 96 Idaho at 540, 531 P.2d at 1185, quoting *Doggett Electronics Corp. of America, supra,* 93 Idaho 26, 30, 454 P.2d 63.

It is therefore unnecessary to rule on the "portable tort" hypotheticals of the trial court and of respondent. We hold simply that the facts alleged in the present case suffice to bring A. H. Robins Company within the jurisdiction of the courts of Idaho on the grounds that it has allegedly committed "a tortious act within this state."

Having brought herself within the statutory language, plaintiff-appellant need meet only one other test: Would the exercise of jurisdiction by an Idaho court so offend "traditional notions of fair play and substantial justice" as to violate Robins' constitutional right to due process? *See, International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The factors which a trial court should consider in determining whether it is fair to exercise long-arm jurisdiction over a non-resident manufacturer whose product has allegedly injured a resident plaintiff of Idaho were well stated in *Phillips v. Anchor Hocking Glass,* 100 Ariz. 251, 413 P.2d 732 (1966):

> "First, the court should consider the nature and size of the manufacturer's business. As the probability of the product entering interstate commerce and the size or the volume of the business increase, the fairness of making the manufacturer defend in the plaintiff's forum increases. Second, the court should consider the economic independence of the plaintiff. A poor man . . . may not be able to afford a trip to another jurisdiction to institute suit. . . . Third, the court should consider the nature of the cause of action including the applicable law and the practical matters of trial. As the number of local witnesses increases and

their availability to travel decreases, it seems fair to make the manufacturer defend in the plaintiff's forum. These factors discussed above are guidelines to assist the trial court. They are not exclusive and the court should consider all other matters it deems relevant." 413 P.2d at 738.

California's sole contact with this case is its being the location where appellant's intrauterine device was inserted. Idaho, by contrast, is the state of residence of appellant and of her physician and surgeon, as well as the location of the hospital where the operation was performed and where the medical records are kept. We can find no inconvenience or unfairness in forcing a Virginia based corporation to defend itself in Idaho rather than in California against a claim that its product has caused appellant's injury.

Ours is an age of great mobility, both of people and of products. To lose sight of this fact and to engage in the kind of hair-splitting analysis urged by respondent

" . . . would tend to promote litigation over extraneous issues concerning the elements of a tort and the territorial incidence of each, whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature." *Doggett, supra,* 93 Idaho at 28, 454 P.2d at 65, quoting *Gray v. American Radiator & Standard Sanitary Corporation,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).

In a products liability case, we find persuasive the analysis provided by, "In Personam Jurisdiction over Non-Resident Manufactures in Product Liability Actions," 63 Michigan Law Review 1028:

"It would seem consonant with fairness to subject the manufacturer to jurisdiction whenever his product gave rise to the cause of action within the foreign state, even though the manufacturer had no other contact in the state. As far as the manufacturer's economic objectives are concerned, his overriding purpose is to have his product consumed. Where this consumption occurs is relatively insignificant to him. This observation supports the position that the manufacturer can be summoned to defend a cause of action arising out of the use of his product wherever it may be located. Any inconvenience that may be asserted is more than balanced by his interest in defending the integrity of his product, the maintenance of which may ultimately determine his economic success. There can be no unfairness in forbidding the manufacturer to disassociate himself from his product." *Ibid.,* at 1031–32.

We therefore repeat the conclusion of *Doggett* that, "If dangerously defective goods are placed in the interstate flow of commerce, those whose negligence created the defect should be prepared to defend themselves wherever injury should occur." 93 Idaho at 31–32, 454 P.2d at 68. The trial court's order granting respondent's motions to quash the service of summons and dismiss the case for lack of jurisdiction is reversed and the cause remanded for further proceedings. Costs to appellants.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.