540 P.2d 804

**TANDY & WOOD, INC., Plaintiffs-Appellants,**

v.

**William MUNNELL, d/b/a M & M Cattle Co., Defendants-Respondents.**

**No. 11698.**

Supreme Court of Idaho.

Sept. 23, 1975.

Theodore V. Wood, M. B. Hiller, St. Clair, St. Clair, Hiller & Benjamin, Idaho Falls, for plaintiffs-appellants.

E. W. Pike, Jay B. Gaskill, Albaugh, Smith & Pike, Idaho Falls, for defendants-respondents.

McQUADE, Chief Justice.

The sole issue presented in this case is whether the District Judge below correctly quashed the service of summons in the grounds the courts in Idaho have no personal jurisdiction over defendant-respondent William Munnell.

Tandy & Wood, Inc., an Idaho Corporation, brought this action against Munnell, doing business as M & M Cattle Company for damages resulting from a breach of an alleged real estate broker's employment contract. Munnell, a resident of California, owns a tract of land in Jefferson County in Idaho. Tandy & Wood alleged in its complaint that Munnell, through his agent, one Bill Clevenger, entered into a contract with it whereby Tandy & Wood was to secure a purchaser for Munnell's land. Tandy & Wood was to receive a real estate commission equal to 6% of the sale price. It maintains that it secured a purchaser at the price and under the terms set forth in the contract, but that Munnell wrongfully repudiated the contract, thus depriving it of its commission of $43,411.-20.

Service of the summons and the complaint were made on Munnell in California. Thereupon he appeared specially in District Court through his attorney and moved to quash the return of service of summons on the ground Idaho had no jurisdiction over him. Interrogatories and affidavits were filed and both sides submitted briefs on the motion. Tandy and Wood claimed there was jurisdiction under I.C. § 5-514(a) or (c), the Idaho "longarm statute." [1] The District Court held that since Tandy & Wood could not show a written authorization for Clevenger to act as Munnell's agent in entering into the real estate listing agreement, the alleged contract was invalid under I.C. § 9-505. Thus the court held there was no jurisdiction and it granted the motion to quash. Tandy & Wood appeals, and we reverse.

---

1. "5-514. *Acts subjecting persons to jurisdiction of courts of state.*—Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempted to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;

. . . . .

(c) The ownership, use or possession of any real property situate within this state; . . . ."

▮ We find Idaho has jurisdiction in this matter under I.C. § 5–514(c) : this is a "cause of action arising from the . . . ownership, use or possession of any real property situate within this state." This Court has not yet had occasion to construe this particular provision of I.C. § 5–514. However, several cases have interpreted other provisions of the statute, and from these casees certain general precepts can be drawn. The statute was designed to provide a forum for Idaho residents. The legislature intended to exercise all the jurisdiction available to Idaho under the due process clause of the United States Constitution.[2]

▮ Applying these precepts to this case we find that the cause of action in this case, although based upon a breach of contract, is one "arising from" Munnell's ownership of land. The concept of "arising from" is broad. It is not restricted solely to actions challenging the ownership. Rather it suffices if there is a "substantial connection" between the ownership of land in Idaho and the cause of action.[3] In this case there is such a substantial connection. The controversy concerns an alleged real estate broker's employment contract. There is a substantial connection between the alleged contract and Munnell's ownership of the land. Without the latter, the former could never have been contemplated.

This holding also conforms with due process requirements. There are close analogies between this case and *McGee v. International Life Ins. Co.*[4] In McGee a non-resident insurance company solicited a reinsurance agreement with a resident of California. The offer was accepted in that state and the insurance premiums were paid from there until the insured's death. Suit was then brought against the insurance company because it refused to pay claims on the policy. Based upon this single contact the U.S. Supreme Court upheld California's exercise of personal jurisdiction, saying the state "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."[5] So too in this case Idaho has a manifest interest in providing redress in a controversy concerning an alleged attempt to sell real property situated in this state.

Munnell has purposefully availed himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," within the requirement of *Hanson v. Denckla.*[6] By owning land in Idaho Munnell has invoked the benefits and protections of Idaho's law of real property. Among these benefits is the right to sell the land. By receiving the benefit of this right, Munnell should also be required to defend in Idaho an action involving the alleged contract to sell such property.

We express, of course, no opinion as to the merits of the case. The motion to quash service of summons was not the proper occasion to rule upon the validity of the alleged contract. The order of the District Court quashing service of summons is reversed, and the cause is remanded for further proceedings.

Costs to appellants.

---

2. *Akichika v. Kellerher*, 96 Idaho 930, 539 P. 2d 283 (1975) ; *Intermountain Business Forms, Inc. v. Shepard Bus. Forms Co.*, 96 Idaho 538, 531 P.2d 1183 (1975) ; *Doggett v. Electronics Corp.*, 93 Idaho 26, 454 P.2d 63 (1969) ; *B.B.P. Ass'n, Inc. v. Cessna Aircraft Co.*, 91 Idaho 259, 420 P.2d 134 (1966).

3. *Cf. McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

4. *Supra,* n. 3.

5. *McGee v. International Life Insurance Co., supra,* n. 3, 355 U.S. at 223, 78 S.Ct. at 201.

6. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BAKES, Justice (concurring specially):

In addition to the reasons expressed in the majority opinion for reversing the trial court, in my view the trial court was also in error in applying I.C. § 9–505(5) [1] to determine that the listing contract in question was not valid and therefore that it had no jurisdiction over the respondent. The listing agreement was not a contract purporting to give the appellant Tandy & Wood authority to sell the property and transfer title, which would have required compliance with I.C. § 9–505(5), but was a contract for personal services, i. e., for the procurement of a purchaser for the property. When appellant Tandy & Wood, Inc., procured a purchaser who was ready, willing and able to purchase upon the terms of the listing agreement, it had performed its portion of the contract. The listing agreement did not purport to give authority to the real estate agent Tandy & Wood to bind the respondent Munnell to a contract, nor did it purport to give the real estate agent Tandy & Wood authority to transfer the property by deed. Therefore, I.C. § 9–505(5) was not applicable.

The applicable section of the Idaho Code is § 9–508 [2] which requires real estate commission contracts to "be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative." While this section requires the commission contract itself to be in writing, signed by the owner or his "representative," nothing in the section requires the representative's agency to be in writing. One may be a legal, appointed and duly qualified representative, i. e., an agent, with authority to bind one's principal without a written agreement of agency. *See, e. g., Simplot Soilbuilders, Inc. v. Leavitt,* 96 Idaho 17, 523 P.2d 1363 (1974); *Killinger v. Iest,* 91 Idaho 571, 428 P.2d 490 (1967). Thus, unless the "representative" of the owner attempts to bind the owner to a contract or deed purporting to sell or transfer the land, as distinguished from a contract to procure a purchaser of the land, there is no statutory requirement that the "representative's" agency be in writing. *Cf. Sunset-Sternau Food Co. v. Bonzi,* 60 Cal. 2d 834, 36 Cal.Rptr. 741, 389 P.2d 133 (1964). The general rule of agency is that an agent's authority need not be in writing unless required by statute. *Sunset-Sternau Food Co. v. Bonzi, supra; see, Sharpe Sign Co. v. Parrish,* 33 Wash.2d 883, 207 P.2d 758 (1949). This listing contract, to procure a purchaser, did not come within I.C. § 9–505, and therefore the alleged agency of Bill Clevenger would not have to be in writing in order to allow him to enter into a contract satisfying the requirements of I.C. § 9–508.

DONALDSON, J., concurs.

---

1. "9–505. *Certain agreements to be in writing.*—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents:

 .  .  .  .  .

 "5. An agreement for the leasing, for a longer period than one year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

2. "9–508. *Real estate commission contracts to be in writing.*—No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative."