[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, a New York corporation, has sued the defendant as the maker of a $720,000 promissory note and as guarantor of a $2,315,000 note made by Adson Partners, a New York limited partnership. The defendant has moved to dismiss the action for lack of jurisdiction over the person.
Following the procedure specified in 52-57a, the plaintiff affected in hands service on the defendant in New York through the use of a duly qualified attorney. The plaintiff claims that at the time the defendant was "subject to the jurisdiction of the courts of this State", within the meaning of this statute. The defendant does not dispute the fact that the plaintiff properly complied with the statute. The defendant asserts instead that such service did not perfect in personam or quasi in rein jurisdiction over the defendant in Connecticut. CT Page 11078
The plaintiff rests its jurisdictional footing on 52-59b, the Connecticut Long Arm Statute. Whenever such a jurisdictional predicate is attacked by the defendant the burden of proving jurisdiction over the person is on the plaintiff. Standard Tallow Corporation v. Jowdy, 190 Conn. 48 (1983). In order for the plaintiff to succeed it must persuade the court that its jurisdiction derives from 52-59b.[1]
Jurisdiction over the person which is accomplished by adherence to 52-59b may be either in personam or quasi in rem. In personam jurisdiction has been defined simply as "an action having the objective of a judgment against the person, as distinguished from a judgment against the property." 1 Am.Jur.2d 39, p. 572. Quasi in rem jurisdiction is defined as the adjudication of "the rights of persons in respect to specific property". White Bowman Plumbing and Heating Inc., v. Biafore, supra at 17.
I. IN PERSONAM JURISDICTION
The plaintiff's argument in support of in personam jurisdiction over the defendant is twofold. First, relying on the defendant's discovery admissions that he has transacted business within the state, the plaintiff argues that the defendant "transacts business within the state" within the meaning of subsection 1 of 52-59b(a). Secondly, because the defendant admits to ownership interests in apartment buildings and condominiums in Stamford, Hamden and West Hartford, he "owns, uses or possesses" real property within the state and therefore is subject to long arm jurisdiction under 52-59b(a)(4).
Finally, the defendant postulates that if the court does not have personal jurisdiction over the defendant, it at least enjoys quasi in rem jurisdiction by virtue of the presence of these real property interests within the state. The requisite analysis for each of these is similar, if not identical.
The following are the facts which are necessary for a consideration of these positions. All of the loan documents which form the basis for this suit were prepared by a New York attorney in the State of New York. They were negotiated in New York and the real property which secures the larger of the two notes is located in New York. The documents were executed in New York and the defendant's guarantee provides for the application of New York law in the event of a dispute. Through discovery, the plaintiff has CT Page 11079 established that all of the borrowed funds were deposited to a New York bank account in the name of a partnership of which the defendant is one of two partners. The funds were utilized for working capital for various real estate projects in which the defendant has an interest. Furthermore, from 1989 to 1991 the defendant wrote checks on the account made payable to or for the use of several of the defendant's Connecticut real estate holdings. The plaintiff has determined and the defendant has not denied that approximately 9% of the loan proceeds was applied to these properties. This is the extent of the involvement of the New York loan transactions with the Connecticut real property. In fact, there is no evidence that the checks drawn on the partnership account were even drawn on the funds borrowed from Chemical; the evidence permits an inference that they could have been drawn on other funds.
A. TRANSACTING BUSINESS.
In its determinations of whether a cause of action arises from any of the acts enumerated in 52-59b, our Supreme Court has chosen to follow New York decisional law because our legislature used the New York long arm statute as its model. Zatolas v. Nisenfeld,184 Conn. 471, 474 (1981). New York courts have consistently held that the language "arising from" as used in subsection (1) requires the establishment of a "substantial relationship or nexus between the business transacted by the defendant in the state and the plaintiff's cause of action". Lancaster v. Colonial Motor Freight Line, 581 N.Y.S.2d 283, 287 (N.Y. A.D. 1992) "What must be shown is that the defendant had some business contacts within the state and the cause of action sued upon arose out of these business contacts".[2]
While the term "transacts business" embraces even a single purposeful transaction, Zatolas v. Nisenfeld, supra at 74, that business must be transacted in Connecticut. Cooper Co. v. Woodbridge Associates, 6 Conn. L. Rptr. 14, 415 (1992, Hodgson, J.). In determining whether a cause of action arose from a defendant's transaction of business within Connecticut, courts do not resort to a rigid formula, but rather "balance conditions of public policy, common sense and the chronology and geography of the relevant factors". Zatolas v. Nisenfeld, supra at 477.
In Cooper Co. v. Woodbridge Associates, supra, non resident plaintiffs brought an action in Connecticut against several out of state residents. They alleged long arm jurisdiction based upon a CT Page 11080 joint venture to develop real property in Connecticut pursuant to which the parties had expended funds for services of attorneys, architects and engineers in Connecticut. The court found that "the transaction that occurred in Connecticut — the consultation with the lawyers, architects and engineers and the efforts to secure rights to the properties under discussion for development are not in fact the subject matter of any of the plaintiffs' claims." Id. at 418. The court noted that the claims were based on the plaintiffs' relationship with the defendants concerning their role in the proposed development of the site in Connecticut, concluding that the alleged agreement was a transaction negotiated in New York, using New York counsel, concerning financial and other relations of New York entities toward each other Ibid.
Applying the New York rule, it is this court's judgment that the relationship between the plaintiff's cause of action and the business transacted by the defendant in this State was insubstantial and so attenuated as not to constitute the transaction of business within the meaning of the statute.
B. OWNERSHIP, USE OR POSSESSION OF REAL PROPERTY.
The facts which control the court's "transacting business" investigation also drive its exploration of the real property argument. Like transacting business, ownership, use or possession of real property as a basis for in personam jurisdiction requires that the real property interests involved be related to the subject matter of the litigation. Shaffer v. Heitner, 53 L.Ed.2d 683
(1977). Shaffer v. Heitner, requires that jurisdiction be founded upon a relationship among the forum, the defendant and the controversy. "Mere presence of the property within the state is probably insufficient to support jurisdiction over claims unrelated to the defendant's activities within the forum." The Supreme Court, 1976 Term, 7 Harvard L. Rev., 72, 159-160 (1977).
Connecticut courts have not yet ruled on the meaning and scope of the terms "arising from" as applied to real property activities. In the context of ownership, use or possession of real property, several sister states have construed "arising from" in similarly worded long arm statutes to reach the same result.
In Darmath v. Reintz, 485 So.2d 881, 883 (1986 Fla.) the court noted that "arising from" is a broad concept which "is not restricted to actions which directly challenge the ownership of the property or to actions in which the property itself is the CT Page 11081 subject of the lawsuit. Rather, the term means that a direct affiliation, nexus or substantial connection exists between the basis for the cause of action and the ownership of the property". (Citations omitted). Hence, the court found a substantial relationship between the basis for the lawsuit (fraudulent representation made by the owner of the property during negotiations for an option) and the defendant's ownership of property within the state.
In Tandy and Wood Inc. v. Munnell, 540 P.2d 804 (1975 Cal.) the court held that a broker' suit against an owner of California real property which alleged a breach of a listing agreement for the sale of that property arose from the ownership of real property because there was a substantial connection between the listing agreement sued on and the defendant's ownership of the land.
On more tenuous grounds, a federal court found that where a Massachusetts land owner retained an architect to design a nursing home on his land, the land constituted an essential element of the transaction "for it was that land that was to be improved by the performance of the contract." deLeo v. Childs, 304 F. Sup. 593,595 (1969). As the court said, "every element in the performance the contract related to the Massachusetts land". Ibid. Consequently, the court found that the cause of action "arose from having an interest in, using or possessing real property" within the jurisdiction.
In a case more closely analogous to this proceeding, the Georgia Court of Appeals found the requisite substantial connection between the cause of action and the property because the out of state promissory note was executed by the non resident defendants for "the purpose of becoming record title owners in improved Georgia realty". Hart v. DeLowe Partners Ltd. 250 S.E.2d 169, 171
(1978). In that case the note was executed with full knowledge that it would be used in conjunction with, and an integral part of, a Georgia real estate transaction. None of the factual circumstances which were present in these cases are present in this litigation.
II. QUASI IN REM JURISDICTION.
Whether the court has jurisdiction, quasi in rem, is controlled by Shaffer v. Heitner, supra, wherein the Supreme Court limited the applicability of the principle to those situations in which there is a relationship among the forum state, the defendant CT Page 11082 and the controversy between the parties. For the reasons discussed above, that relationship in this case is too highly attenuated to be meaningful.
The defendant's Motion to Dismiss is granted.
MOTTOLESE, J.